IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JUSTIN R. COOK,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:14-cv-00164-TC<br><br>Judge Tena Campbell |

    With two injured knees, back pain, and depression, Justin Cook applied for Social Security disability insurance. An Administrative Law Judge (ALJ) for the Social Security Administration (the Administration) denied his application, determining that he did not have a "disability" as defined by the relevant statute. Mr. Cook sued, seeking review of the decision denying his application for disability insurance benefits. After carefully reviewing the record and the parties' briefing, the court concludes that the Administration's decision is supported by

substantial evidence and is free of legal error. Accordingly, the court AFFIRMS the Administration's decision.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). Where the record as a whole supports the Administration's decision it must be affirmed, "regardless of whether [the court] would have reached a different result." Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990)

Mr. Cook first contends that the ALJ erred by assigning "moderate weight to a non-examining physician" but "little weight to [his] treating physician's opinion." (Pl.'s Opening Br. 4, ECF No. 24.) Mr. Cook argues that the ALJ failed to engage in a mandatory two-step process for analyzing whether to assign controlling weight to the opinion rendered by his treating physician—Dr. Avery—and failed to use the appropriate factors in weighing the opinion. Additionally, Mr. Cook argues that the ALJ assigned improper weight to the

2

opinion rendered by a non-examining physician—Dr. Taggart—before the record was complete.

"In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). Though an ALJ should "[g]enerally, . . . give more weight to opinions from [a claimant's] treating sources," 20 C.F.R. § 404.1527(d)(2), the ALJ should also keep "in mind that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source.'" Watkins, 350 F.3d at 1300 (quoting Social Security Ruling (SSR) 96–2p, 1996 WL 374188, at *2) (alteration in original).

The Tenth Circuit has developed a two-step process for determining whether a treating physician's opinion is entitled to controlling weight. The ALJ must "first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. (quoting SSR 96–2p, 1996 WL 374188, at *2). If "the answer to this question is 'no,' then the inquiry at this stage is complete." Id. If the answer to this question is "yes," then the ALJ must "confirm that the opinion is consistent with other substantial

evidence in the record." Id. If the opinion is deficient in either of these respects, "then it is not entitled to controlling weight." Id.

If the treating physician's opinion is not entitled to controlling weight, an ALJ must weigh the opinion using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citation and internal quotation marks omitted).

Here, the ALJ reviewed Dr. Avery's opinion and determination that Mr. Cook qualified as "disabled" and decided to give the assessment "little weight." (R. 28, ECF No. 15.) Though the ALJ did not explicitly decline to give Dr. Avery's opinion controlling weight, he did so implicitly by stating the lesser weight he gave the opinion. (Id.) This suffices. See Mays v. Colvin, 739 F.3d 569, 575 (10th Cir. 2014) (declining to remand where ALJ "implicitly" declined to give the treating physician's opinion controlling weight).

4

Second, the ALJ determined that Dr. Avery's opinion was inconsistent with other substantial evidence in the record. In fact, in his decision, the ALJ recited evidence showing that Mr. Cook did not qualify as disabled, contrary to Dr. Avery's opinion. Finally, though the ALJ did not discuss all six factors in deciding what weight to give Dr. Avery's opinion, he explained that he doubted Dr. Avery was "familiar with the definition of 'disability' contained in the Social Security Act and regulations." (R. 28.) This consideration falls within the valid factors an ALJ may consider. See 20 C.F.R. § 404.1527(c)(6) (stating that the ALJ may consider other factors, including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has"). This also suffices. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ also did not err in assigning moderate weight to a non-examining physician, Dr. Taggart. Though more information came to light after Dr. Taggart gave his evaluation, the ALJ determined that Dr. Taggart's opinion was "consistent with the medical evidence of record as a whole." (R. 28.) In doing so, the ALJ determined that Dr. Taggart's opinion was consistent with the

information that came to light after his evaluation. Substantial evidence supports this conclusion.

Second, Mr. Cook contends that the ALJ failed to consider his obesity in determining his residual functional capacity. He argues that his "obesity compounds his back and knee ailments to a point" that he should qualify as disabled. (Pl.'s Opening Br. 8.)

"An ALJ is required to consider the effects of obesity when assessing the claimant's [residucal functional capacity]." Rose v. Colvin, 634 F. App'x 632, 637 (10th Cir. 2015) (citing SSR 02–1p, 2002 WL 34686281, at *1 (Sept. 12, 2002)). But the ALJ may not "'make assumptions about the severity or functional effects of obesity combined with other impairments.'" Id. (quoting SSR 02–1p, 2002 WL 34686281, at *6). Where the record does not support a claimant's position that his "obesity, either alone or in combination with other conditions," precludes him from working, the ALJ's failure to mention his obesity does not constitute reversible error. Howard v. Barnhart, 379 F.3d 945, 948 (10th Cir. 2004).

Here, Mr. Cook claims that based on his height and weight he qualifies as "obese." When assessing Mr. Cook's residual functional capacity, the ALJ took

into account the examinations in the record which showed Mr. Cook's functional limitations in light of all of his impairments, but never mentioned obesity. Though Mr. Cook claims that his obesity "compounds" his problems, he has cited no supporting evidence that his "obesity, either alone or in combination with other conditions," precludes him from working. Id.  In fact, Mr. Cook points to no evidence in the record that a doctor diagnosed him with obesity or opined that his weight affected his functioning in any way.  Accordingly, the ALJ's failure to explicitly discuss obesity does not constitute reversible error.  See Rose, 634 F. App'x at 637 (concluding that the ALJ's failure to discuss obesity did not constitute reversible error where the claimant pointed to "no medical evidence indicating that her obesity resulted in functional limitations").

      Third, Mr. Cook contends that the ALJ's decision should be reversed because it relied on a vocational expert's testimony that conflicted with the Dictionary of Occupational Titles (DOT).

      In general, when a vocational expert's testimony conflicts with the DOT descriptions, the ALJ must resolve the conflict. SSR 00-4P, 2002 WL 34686281 at *1-2 (Dec. 4, 2000).  However, "DOT's silence concerning stand/sit options" for a specific job does not constitute a conflict with a vocational expert's

7

testimony that a claimant needs stand/sit options to perform that job. Wahpekeche v. Colvin, 640 F. App'x 781, 785-86 (10th Cir. 2016)

Here, the vocational expert testified that that Mr. Cook could perform work as a Small Parts Assembler and as a Medical Assembler. Neither of the DOT descriptions for these positions discuss a stand/sit option. But as the Tenth Circuit has ruled, "DOT's silence concerning stand/sit options" for a particular position does not conflict with a vocational expert's testimony that a claimant can perform that position with a stand/sit option. Id. Accordingly, the ALJ had no duty to resolve the alleged conflict before accepting the vocational expert's testimony.

In sum, the court finds that the ALJ applied the correct legal standards and his decision was supported by substantial evidence. Accordingly, the court AFFIRMS the Administration's decision.

DATED this 5th day of October, 2016.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge